IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| MARTIN P. KUENNEN; and CAROL KUENNEN,<br><br>Plaintiffs,<br><br>vs.<br><br>WRIGHT MEDICAL TECHNOLOGY, INC., a Delaware corporation,<br><br>Defendant. | No. C14-2045<br><br>RULING ON MOTIONS FOR PROTECTIVE ORDER |

On the 2nd day of February 2015, this matter came on for telephonic hearing on the Motions for Protective Order (docket numbers 23 and 26), filed by Defendant Wright Medical Technology, Inc. on January 7, 2015 and January 16, respectively. The Plaintiffs were represented by their attorneys Michael J. Blakely, Jr., and N. Kirkland Pope. The Defendant was represented by its attorneys Gregory M. Lederer, Megan R. Dimitt, and Michael O. Fawaz.

## I. BACKGROUND

On July 10, 2014, Plaintiff Martin P. Kuennen, and his wife, Carol Kuennen, brought this action seeking damages for injuries sustained to Kuennen when a hip replacement device manufactured by Defendant failed. On August 6, Defendant Wright Medical Technology, Inc. filed an answer, denying the material allegations.[1]

---

[1] Defendant Wright Medical Group, Inc. was also initially named as a defendant, but was dismissed without prejudice on August 5, 2014. *See* docket number 7.

On September 23, 2014, the Court adopted a proposed Scheduling Order and Discovery Plan submitted by the parties. Among other things, the parties agreed to an April 6, 2015 deadline for completion of discovery. In reliance on the deadlines agreed to by the parties, this matter has been set for trial before Chief Judge Linda R. Reade beginning on October 26, 2015. At the parties' request, the discovery deadline was later extended to May 6, 2015.

## II. DISCOVERY

The attorneys representing the parties in this case also represented the parties in *John T. and Kathy A. Dulle v. Wright Medical Technology, Inc.*, 1:14-cv-00045 (N.D. Iowa). The parties stipulated that discovery produced in one case could be used in the other. Defendant initially filed two motions for protective orders in *Dulle*, but that case settled before the motions were addressed by the Court. Accordingly, the motions have been refiled in the instant action.

On August 19, 2014, the plaintiffs in *Dulle* served Defendant with their first set of interrogatories, first set of requests for production of documents, and a RULE 30(b)(6) notice for deposition. *See* Plaintiffs' Appendix (docket number 24-1), at 50-110. The notice identifies 47 topics, divided into 11 areas. Defendant responded in a letter on September 19, indicating that Brian McDaniel would be made available as a RULE 30(b)(6) witness on October 14. Defendant also objected, however, to the nature and scope of the topics identified by plaintiffs in their notice. *Id.* at 1-6. Plaintiffs replied on October 2, contesting the numerous objections made by Defendant. *Id.* at 11-15. Defendant repeated its objections, at length, in a letter dated October 7. *Id.* at 16-28.

After discussing the matter further on October 8, and believing they had reached "some common ground," the parties proceeded with the deposition of McDaniel on October 14. *Id.* at 29. Unfortunately, it became apparent at the deposition that the parties had not reached an agreement regarding the scope of the RULE 30(b)(6) deposition. After

the *Dulle* case was settled, Defendant filed the instant motions seeking a judicial determination on the legitimate scope of discovery.[2]

## III. DISCUSSION

### A. Applicable Law

The familiar standard governing the scope of discovery generally is found in FEDERAL RULE OF CIVIL PROCEDURE 26(b)(1): "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." In a discovery context, relevancy "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). *See also Davis v. Union Pacific R.R. Co.*, 2008 WL 3992761 (E.D. Ark.) at *2 ("a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party."); *Moses v. Halstead*, 236 F.R.D. 667, 671 (D. Kan. 2006) (same).

"Discovery Rules are to be broadly and liberally construed in order to fulfill discovery's purposes of providing both parties with 'information essential to the proper litigation of all relevant facts, to eliminate surprise, and to promote settlement.'" *Rollscreen Co. v. Pella Products*, 145 F.R.D. 92, 94 (S.D. Iowa 1992). While the standard to be applied is one of liberality, however, "relevancy under Rule 26 is not without bounds." *Bredemus v. International Paper Co.*, 252 F.R.D. 529, 533 (D. Minn. 2008). *See also Oppenheimer Fund*, 437 U.S. at 351 ("At the same time, 'discovery, like all matters of procedure, has ultimate and necessary boundaries.'") (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

---

[2] At the time of hearing, it appeared the parties may be able to reach some agreement in this regard. Subsequent to the hearing, however, the Court was advised that they were unable to reach any resolution of the disputed issues.

Generally, the party resisting production of the requested information bears the burden of establishing lack of relevancy. *St. Paul Reinsurance Co., Ltd. v. Commercial Financial Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000).

> The party must demonstrate to the court "that the requested documents either do not come within the broad scope of relevance defined pursuant to FED. R. CIV. P. 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.

*Id.* (quoting *Burke v. New York City Police Department*, 115 F.R.D. 220, 224 (S.D.N.Y. 1987)). "However, when a request for discovery is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request." *Cunningham v. Standard Fire Ins. Co.*, 2008 WL 2902621 (D. Colo.) at *1.

### B. Analysis

In its initial motion for a protective order, Defendant asks the Court to "limit the scope of topics of RULE 30(b)(6) depositions and further limit Plaintiffs to taking only 10 depositions."[3] In its second motion for entry of a protective order, Defendant asks the Court to "limit the scope of all RULE 30 depositions."[4] In its brief and at the hearing, Defendant focused its attention on two areas of inquiry: the so-called "Cremascoli evidence," and evidence of a "metal-on-metal" alternative.

#### 1. The Cremascoli Evidence

An Italian company — Cremascoli — designed and manufactured a similar hip implant device in 1985 and marketed it in Europe. In 1999, Defendant purchased

---

[3] Defendant's Motion for Entry of a Protective Order (docket number 23) at 1.

[4] Defendant's Second Motion for Entry of a Protective Order (docket number 26) at 1.

4

Cremascoli. In 2000, Defendant obtained FDA clearance to market the device which is the subject of this lawsuit. At the time of hearing, Defendant's counsel advised the Court that "the Cremascoli device was the predecessor device from which Wright Medical bought the company and worked from that to create the design at issue here." At his deposition, McDaniel conceded that "it was important for [Wright Medical] to understand the [Cremascoli] device and its configurations as a prototype back when Cremascoli owned it and the development of that device from the prototype up to the point that Wright Medical Technology acquired it."[5]

At the hearing, Defendant seemed to concede that Plaintiffs are entitled to discover what role the Cremascoli device played in the development of the device at issue here. However, Defendant argues that even if evidence regarding the Cremascoli design is discoverable, it is unreasonable to expect Defendant to prepare a RULE 30(b)(6) witness to testify regarding the design, development, and testing of the device from 1985 to 1999, when Cremascoli was purchased by Wright Medical. Defendant suggests, moreover, that related documents generated during that time are presumably written in Italian.

The Court concludes that Plaintiffs are entitled to discover the role which the Cremascoli device played in the development of the device at issue here. Defendant must produce a knowledgeable witness who can testify regarding the extent to which the Cremascoli device served as a model for Defendant's device, and the manner in which the Cremascoli device may have been modified. That is, Plaintiff is entitled to discover information regarding the role which the Cremascoli design played in the development of the subject device, and any knowledge which Defendant had regarding the Cremascoli device during the development of the device in this case. For example, if Defendant knew of testing performed on the Cremascoli device, then that information is discoverable. But

---

[5] Deposition of Christopher Brian McDaniel, 40:3-9; Plaintiffs' Appx. (docket number 24-1) at 124.

Defendant need not search out Cremascoli test results now, if they were unknown to Defendant then. The witness must also be prepared to testify regarding what investigation Defendant conducted, if any, into complaints of product failure made against the Cremascoli device prior to its acquisition by Defendant. Defendant is not required to search out the history of the original design in 1985, if that information was unknown to Defendant when the device in this case was being developed in 2000, nor is it required to translate any Italian documents into English.[6]

### 2. *The Metal-on-Metal Alternative*

The prosthetic neck component at issue in this case was made out of titanium. It is my understanding that Defendant also manufactures an alternative which has a cobalt chromium neck. At the time of hearing, Defendant conceded that Plaintiffs have the burden of proving there was an alternative design available, and agreed that Plaintiffs "should be able to ask questions about alternative designs." Defendant objects, however,

---

[6] The Court notes, parenthetically, that Defendant complains in its brief that at the RULE 30(b)(6) deposition, "Plaintiffs' counsel sought a considerable amount of information from Mr. McDaniel that was outside the scope of the twelve (12) Modified Topics." Defendant's Brief (docket number 23-2) at 5. For example, McDaniel was asked "[h]ow are you compensated when you work for Wright Medical Technology?" McDaniel was also asked if he was provided with any stock options while working at Wright Medical, and whether he currently owned any stock in Wright Medical. On each occasion, Defendant's counsel objected and instructed McDaniel not to answer. The vast majority of courts which have addressed this issue have concluded that the questioning of a RULE 30(b)(6) deponent is not limited to those subjects identified in the RULE 30(b)(6) notice. That is, a witness may testify — in his individual capacity, and not as a representative of the company — regarding any personal knowledge which he may have regarding relevant issues. *See American General Life Ins. Co. v. Billard*, 2010 WL 4367052 (N.D. Iowa) at *4 (collecting cases). Even in *Paparelli v. Prudential Ins. Co. of America*, 1008 F.R.D. 727 (D. Mass. 1985) — the only case which has concluded that the scope of the questioning is limited by the RULE 30(b)(6) notice, rather than RULE 26(b) — the court concluded that counsel improperly instructed the witness not to answer. Instead, the party's remedy was pursuant to RULE 30(d).

to Plaintiffs asking questions regarding the specific alternative product sold by Defendant. Defendant suspects that it is simply an attempt by Plaintiffs' counsel to obtain discovery which may be useful in other pending litigation. Defendant asserts that a titanium neck was state-of-the-art in the industry when Kuennen purchased his hip implant, and "[t]he U.S. market for hip implants moved away from titanium products and shifted to cobalt chromium implants *after* Mr. Kuennen received his Modular PROFEMUR® Titanium Neck."[7]

Given the broad scope of relevancy in the discovery context, the Court concludes that evidence regarding alternative designs is relevant to both Plaintiffs' claims and Defendant's defense. It is not for the Court to determine at the discovery stage what the state of the art may have been at any given time, or the efficacy of an alternative design. It is not for me to determine whether one design holds advantages over another. Similarly, I cannot determine if or when a particular design was generally accepted in the U.S. market. I believe these are all appropriate subjects for discovery. The trial judge will determine whether the evidence is relevant and admissible at trial.

### 3. *Limitation on Number of Depositions*

FEDERAL RULE OF CIVIL PROCEDURE 30(a)(2)(A)(i) requires a party to obtain leave of court to take more than ten depositions. According to Defendant's brief, Plaintiffs have already noticed the depositions of nine current and former employees of Defendant, and Defendant anticipates five more RULE 30(b)(6) depositions. Defendant asks the Court to enter a protective order limiting Plaintiffs to a total of ten depositions.

The Court finds the motion is premature. At this point, only one deposition has been held and the Court does not know what information may be produced in subsequent depositions. Plaintiffs have an obligation to use their depositions judiciously, or run the

---

[7] Defendant's Brief (docket number 23-2) at 12-13.

risk that they will be unable to take more than ten depositions. The Court is unable to enter a blanket order denying more than ten depositions, however, without first knowing what depositions were taken, what information was obtain, and why additional depositions are required.

## IV. ORDER

IT IS THEREFORE ORDERED that the Motions for Protective Order (docket numbers 23 and 26) are **GRANTED in part** and **DENIED in part**, as set forth above.

DATED this 25th day of February, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA